Filed 5/5/23  P. v. Macias CA4/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078791 |
| v. | (Super.Ct.No. ICR24587) |
| RAYMUNDO CARDENAS MACIAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. James S. Hawkins, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Law Offices of Michael Poole and Michael L. Poole for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

In 1996, defendant and appellant Raymundo Cardenas Macias pled guilty to unlawful sexual intercourse with a minor.  After his plea, Congress passed the Illegal

1

Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) (Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996).), which Macias argues rendered his conviction a deportable offense. In 2021, Macias filed a motion under Penal Code[1] section 1473.7 seeking to have this conviction vacated on the basis that he did not "meaningfully understand, defend against, or knowingly accept" (§ 1473.7, subd. (a)(1)) the adverse immigration consequences of his plea and would not have taken the plea if he had. The trial court denied the motion.

On appeal, Macias argues the post-plea changes in the law meant he did not meaningfully understand the potential adverse immigration consequences of his plea. The People argue Macias understood the immigration consequences of his plea when he made it. We agree with the People that what is relevant for section 1473.7 is whether Macias understood the immigration consequences at the time of his plea, not whether a later change in the law altered the consequences of the plea. We therefore affirm.

BACKGROUND

For about two years prior to 1996, Macias had an on again, off again sexual relationship with the victim, who was then a minor. On March 19, 1996, when Macias was 23 and the victim was 18, Macias picked her up in his car and they had sex. The victim reported to the police that the sex was non-consensual, which Macias denied.

The Riverside County District Attorney charged Macias with kidnapping (§ 207, subd. (a)) and two counts of forcible rape (§ 261, subd. (a)(2)). In June 1996, Macias

---

[1] Unlabeled statutory citations refer to the Penal Code.

2

pled guilty to false imprisonment in violation of section 236 and unlawful sexual intercourse with a minor in violation of section 261.5.[2] The court dismissed the original three counts and, per his plea agreement, sentenced Macias to five years' probation. At the time, the offenses to which he pleaded guilty were not deportable offenses. (See *United States v. Hernandez-Hernandez* (2005) 431 F.3d 1212, 1217-1218 ["The California false imprisonment statute reaches both conduct that constitutes a crime of violence and conduct that does not."]; *Turijan v. Holder* (2014) 744 F.3d 617, 621 ["Upon review, we conclude that felony false imprisonment under California law does not qualify as a categorical [crime involving moral turpitude]."].)

On June 11, 1996, six days after Macias's plea, members of Congress introduced H.R. No. 3610 to the United States House of Representatives. (H.R. No. 3610 104th Congress, 2nd Sess. (1996); H.R. Rep. No. 104-617, 2nd Sess. (1996).) This bill would pass on September 30, 1996, and would become effective the next year as part of the Omnibus Consolidated Appropriations Act of 1997. Among other things, the IIRIRA added domestic violence, stalking, and child abuse as deportable offenses. (IIRIRA § 350; 8 U.S.C.S. § 1227(a)(2)(E).)

In 2004, Macias was deported to Mexico. Our record does not establish whether his deportation was because of the 1996 conviction or for some other reason.

---

[2] Insofar as our record shows, Macias's plea did not identify a specific subdivision of section 261.5, though the conviction was a felony, and therefore could not have been a conviction under section 261.5, subdivision (b).

In 2021, Macias filed a section 1473.7 motion seeking to withdraw his guilty plea. In support of the motion, Macias submitted a declaration stating that he did not "understand[] that my conviction will cause immigration consequences many years after my plea," that he did not otherwise meaningfully understand the potential adverse immigration consequences of his plea, and that he would not have pled had he known of those consequences.

The trial court denied Macias's motion. Macias timely appealed.

ANALYSIS

Macias argues his motion should have been granted because he did not meaningfully understand or accept the potential immigration consequences of his plea—specifically, he could not have anticipated that the law would change such that his plea would render him deportable. The People argue Macias meaningfully understood the immigration consequences of his plea when he made it, regardless of later changes in the law, and therefore he is not entitled to relief under section 1473.7. We agree with the People.

Section 1473.7, subdivision (a)(1), allows anyone not in criminal custody to file a motion to vacate a conviction or sentence if " '[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty.' " (*People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1002.) A party who moves to vacate their conviction or sentence under

4

section 1473.7 must show "that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea.' " (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1008-1009; see *People v. Mejia* (2019) 36 Cal.App.5th 859.)

In order to prevail under section 1473.7, "[t]he defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319.) " '[P]rejudicial error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*Ibid.*, quoting *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).) "[T]he test for prejudice considers what the defendant would have done, not what the effect of that decision would have been." (*People v. Martinez* (2013) 57 Cal.4th 555, 564.) " 'Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. [Rather, they] should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1134, italics omitted, quoting *Lee v. U.S.* (2017) 582 U.S. __ [137 S.Ct. 1958, 1967].) Thus, "the 'key' to section 1473.7 is not what the defense attorney said or did not say about the immigration consequences of the plea, but is ' "the mindset of the defendant and what he or she understood—or didn't

understand—*at the time the plea was taken*." ' " (*People v. Jung* (2020) 59 Cal.App.5th 842, 857, italics added, disapproved on other grounds by *Vivar*, at p. 526, fn. 4.)

In addition to demonstrating prejudicial error, the moving party must also "establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (§ 1473.7, subd. (e)(1).) It is the moving party's burden to show an adverse immigration consequence from their plea. (See *People v. Gregor* (2022) 82 Cal.App.5th 147, 164 [concluding defendant failed to show an adverse immigration consequence because his plea did not expose him to removal or deportation, exclusion, or the denial of naturalization or lawful status].)

Macias argues, and the People do not dispute, that the IIRIRA rendered his conviction under section 261.5 a deportable offense. Specifically, Macias argues the passage of the IIRIRA in September 1996—combined with later case law interpreting "child abuse" under the IIRIRA to include some sexual offenses against minors—made Macias's conviction for unlawful sexual intercourse with a minor a deportable offense.

We note that neither party cites decisional or statutory law establishing that a conviction under section 261.5 constitutes child abuse under federal immigration law, and there does not appear to be any such authority. We also note that the Supreme Court of the United States has expressly held that a conviction under section 261.5, subdivision (c), is not an aggravated felony, and is not deportable on that basis, because "in the context of statutory rape offenses focused solely on the age of the participants, the

6

generic federal definition of 'sexual abuse of a minor' . . . requires the age of the victim to be less than 16." (*Esquivel-Quintana v. Sessions* (2017) 137 S.Ct. 1562, 1572-1573.) In short, while it appears to be an open question whether a conviction under section 261.5 constitutes "child abuse" under the IIRIRA, a conviction under section 261.5, subdivision (c), is *not* "sexual abuse of a minor" for purposes of immigration.

Nevertheless, we need not decide whether a conviction under section 261.5 constitutes a deportable offense today. Even assuming it does, Macias cannot prevail.

Under section 1473.7, we look to the moving party's state of mind at the time of the plea to determine whether they meaningfully understood the immigration consequences of their plea, and whether there is a reasonable probability they would have rejected the plea if they had understood those consequences. Changes to the law that happen *after* a defendant pleads cannot inform their decision whether to plead. Here, not only did the law change after Macias pled, but the relevant bill was not even introduced until almost a week after Macias's plea. In other words, at the time Macias pled there were no immigration consequences to his plea, and the change in the law he alleges created those consequences was not imminent. Therefore, there is no evidence of any prejudicial error because any immigration consequences came into existence only after Macias's plea, and therefore could not have affected his ability to understand and accept the consequences of that plea. Nor could any amount of immigration advisement, short of predicting the future, have provided Macias the foresight to know the immigration consequences of his plea would change. Thus, we agree with the trial court that Macias

7

failed to demonstrate any prejudicial error which damaged his ability to meaningfully understand, defend against, or knowingly accept his plea.

We do not hold that post-plea changes in the law can never be the basis for a successful motion under section 1473.7. It is conceivable that a motion could be successful where, for instance, the post-plea change in the law is imminent or predictable at the time of the plea, and the defendant can show that competent advice would have taken those expected changes into account. But that is not the case here, and Macias did not introduce evidence nor argue otherwise. Though the IIRIRA passed only three months after Macias's plea, it was not introduced to Congress until almost a week after his plea. Therefore, absent evidence or argument to the contrary, we cannot conclude that competent advice should have anticipated this change in the law, nor that failure to advise Macias about this future change was prejudicial error.

Macias makes several arguments in favor of interpreting section 1473.7 to allow us to vacate a conviction on the basis of post-plea changes to the law. For the most part these arguments fail to grapple with the fact that the inquiry under section 1473.7 is only focused on what a moving party knew when they took their plea, and that it is impossible for unknown future changes to the law to affect present decision-making.

However, Macias makes two additional arguments which we will address more closely. First, he argues that section 1473.7 provides relief where error damages a defendant's ability to "meaningfully understand, defend against, or knowingly accept the actual *or potential* adverse immigration consequences," of a plea. (§ 1473.7, italics

8

added.) Macias argues that the Legislature included the word "potential" to encompass the circumstances we have here, where the adverse immigration consequences of a plea did not come into existence until after the plea.

To begin with, Macias cites no legislative history or any other materials suggesting that this is an appropriate interpretation of the word "potential." A more straightforward interpretation, consistent both with a plain reading of the statute and the authority we have discussed, is that the "potential" adverse immigration consequences contemplated by section 1473.7 include consequences which existed at the time of the plea but which immigration authorities may or may not act on until much later if at all, exposure to discretionary immigration decisions which might or might not result in adverse immigration consequences, or legal uncertainty about whether a given plea carries adverse immigration consequences. (See Assem. Com. on Public Safety, Rep. on Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended Mar. 26, 2015, p. 8 [" 'While the criminal penalty for a conviction is obvious and immediate, the immigration penalty can remain "invisible" until an encounter with the immigration system raises the issue. . . . Immigrants may find out that their conviction makes them deportable only when, years later, Immigration and Customs Enforcement initiates removal proceedings. By then, however, it is too late.' "].) In each of these circumstances, immigration advisements are crucial to allow a defendant to fully understand and navigate the *potential* immigration consequences of a plea. For this reason, error in those advisements or in a defendant's understanding of the immigration

consequences could have significant negative outcomes such that vacating a conviction is an appropriate remedy. Macias's reading, on the other hand, would not only require that all immigration advisements accurately predict the future of immigration law, but also that each individual defendant have perfect foreknowledge of the future of immigration law. We find no support for that position in either the text of the statute or in case authority.

Second Macias raises, for the first time in reply, that section 1016.8, subdivision (a)(4), states, "[a] plea bargain that requires a defendant to generally waive unknown future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea is not knowing and intelligent," and under subdivision (b) "is void as against public policy." Macias argues this means "what matters is the wording of the parties' agreement and not a defendant's actual knowledge of potential, anticipated, or pending changes in the law," and therefore section 1473.7 should apply retroactively.

To begin with, we note Macias has not waived the ability to seek the ameliorative benefits of section 1473.7. But that does not mean he is entitled to receive the relief he requests. Thus, to the extent Macias argues section 1016.8 means he cannot be forbidden from *seeking* relief from his plea under section 1473.7, we agree. We merely disagree that this necessarily means he must be *granted* relief under section 1473.7. (See *Vivar*, *supra*, 11 Cal.5th at pp. 533-534 ["Section 1473.7 offers a remedy in the form of permission to withdraw a plea. But it's a remedy available only to some: those who have

10

completed their sentences and who suffered a prejudicial error that damaged their ability to meaningfully understand, defend against, or knowingly accept the plea's actual or potential immigration consequences."].)

Moreover, Macias's argument misconstrues section 1016.8, which relates to post-plea changes in the law that work to a defendant's *benefit*, and which are intended to apply retroactively. Under section 1016.8, a plea agreement may not waive a defendant's entitlement to seek such a benefit. Nothing in section 1016.8 suggests that unanticipated post-plea changes in the law to the defendant's *detriment* regarding a plea's collateral effects, including actual or potential immigration consequences, could retroactively render a plea void.

Accordingly, we conclude Macias failed to show any prejudicial error under section 1473.7 and affirm.

### DISPOSITION

We affirm the order denying Macias's section 1473.7 motion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.